UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUBREY CHRISTIAN #722265

    Plaintiff,

Case No. 12-12936

v.

Honorable Stephen J. Murphy, III
Magistrate Judge Laurie J. Michelson

MICHIGAN DEPARTMENT OF
CORRECTIONS — HEALTH
SERVICES, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTIONS FOR
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [13, 22]**

    This is a *pro se* prisoner civil rights action filed by Plaintiff Aubrey Christian ("Plaintiff") alleging that numerous health care providers at several Michigan Department of Corrections ("MDOC") facilities have violated his Eighth Amendment rights by denying him adequate medical care to treat the chronic muscle pain caused by his fibromyalgia. (Dkt 20, Am. Compl.)  All pre-trial proceedings have been referred to this Court.  (Dkt. 28.)  Now before the Court are Plaintiff's Motions for Preliminary Injunction and Temporary Restraining Order ("TRO").  (Dkts. 13, 22.) Plaintiff's first motion seeks to enjoin Defendant Michigan Department of Corrections – Health Services and any of its agents and employees from transferring Plaintiff to another correctional institution. (Dkt. 13.)  His second motion seeks an order requiring Defendants to send him to a pain management doctor for a treatment plan. (Dkt. 22 at 5-6.)  Only Defendant Jolane Conklin, a nurse practitioner, has filed a response to either motion.  (Dkt. 25.)

    Having carefully reviewed the relevant pleadings and briefing, the Court RECOMMENDS

that Plaintiff's Motions for Preliminary Injunction and TRO be DENIED.

## I. BACKGROUND

Plaintiff alleges, both in his Amended Complaint and a supporting declaration attached to his second motion for preliminary injunction, that he suffers from fibromyalgia and, prior to his incarceration on August 17, 2009, a pain-management specialist helped control the chronic, widespread muscle pain caused by this condition. (*Id*. at ¶ 28; Dkt. 22, Ex. 1 at ¶¶ 2, 6.) Plaintiff further alleges that, since his incarceration, Defendants have denied him fibromyalgia treatment and have provided inadequate pain medication. (Pl. Decl. at ¶¶ 4-5.)

More specifically, Plaintiff's 170-paragraph Amended Complaint presents a chronological three-year history of his appointments with numerous doctors, nurses, and physicians' assistants at four MDOC facilities, as well as the medical kites he submitted seeking additional appointments and pain medication. (Dkt. 10.)[1] None of the referenced medical records or kites, however, are attached to the pleadings; Plaintiff simply presents his summary of their contents. Plaintiff alleges the same pattern of conduct at every facility: he advised the medical personnel that he suffered from fibromyalgia, they refused to document this diagnosis in his Institutional Medical File, and while they evaluated him and prescribed various pain medications, none of the medications were adequate to relieve his pain. (*Id*.)

Plaintiff's Amended Complaint references only one grievance that was appealed through Step III prior to the filing of this lawsuit on July 5, 2012. Plaintiff alleges that, on November 5,

---

[1]Plaintiff resided at the following MDOC correctional facilities: (1) Charles E. Egler Reception and Guidance Center ("RGC") in August 2009; (2) Gus Harrison Correctional Facility ("ARF") from August 2009 until early February 2011; (3) Earnest C. Brooks Correctional Facility ("LRF") from February 10, 2011 until early January 2012; and (4) Lakeland Correctional Facility ("LCF") from January 2012 to the present. (Dkt, 10.)

2

2011, he submitted a Prisoner Grievance Form stating that the pain medication (Elavil) prescribed by Defendants John Doe M.D. #2 and #3 and John Doe P.A. at the Earnest C. Brooks Correctional Facility ("LRF") was ineffective at stopping his fibromyalgia pain. (Am. Compl. at ¶126.) The grievance was initially denied because the pain medication prescribed for Plaintiff was approved by the Regional Medical Officer ("RMO") and the level of care provided to Plaintiff was adequate for his medical condition. (*Id*. at ¶ 127.) The denial of the grievance was ultimately upheld at Step III on March 21, 2012, because, according to Plaintiff, "[he] had been evaluated and provided with treatment determined to be clinically adequate by the plaintiff's Medical Provider." (*Id*. at ¶ 154.)[2]

Plaintiff's medical appointments, health care kites, and grievance have failed to result in the treatment and pain medication he desires for his alleged fibromyalgia. Accordingly, Plaintiff brought this lawsuit alleging that Defendants have been deliberately indifferent to his medical needs in violation of the Eighth Amendment. (Dkts. 1, 20.) Plaintiff now seeks preliminary injunctive relief to preclude his transfer to another prison and to force MDOC personnel to send him to a pain management specialist for different treatment. (Dkts. 13, 22.) Defendant Conklin, one of the nurse

---

[2] The Court notes that these grievance documents are attached to Plaintiff's Response to Nurse Practitioner Conklin's Motion to Dismiss. (Dkt. 30.) After receiving the Step III denial, Plaintiff contacted the Office of Legislative Ombudsman. (*Id*. at Exs. K, L.) Following its investigation into Plaintiff's claim that he was not receiving adequate medical care, the Ombudsman's Office concluded,

> At this time, it appears that you have been evaluated for several different issues, and it appears that you received appropriate treatment. You have been evaluated by psychiatric and medical professionals on a frequent basis and no current diagnosis of fibromyalgia has been determined. Therefore, it appears that additional medications for that condition are not medically indicated at this time.

(*Id*. at Ex. N.)

practitioners who saw Plaintiff and responded to his medical kites, opposes the motion. (Dkt. 25.) She argues that Plaintiff has not shown any constitutional deprivation because his disagreement with his medical treatment does not rise to the level of an Eighth Amendment violation and that the injunctive relief he seeks is "prohibitively vague and overreaching." (*Id*. at 4-5.)

## II. STANDARD OF REVIEW

In determining whether to grant a TRO or preliminary injunction, a court considers the following four factors: (1) whether the plaintiff is likely to succeed on the merits, (2) whether the plaintiff is likely to suffer irreparable injury absent an injunction, (3) whether the balance of equities tips in the plaintiff's favor, and (4) whether the public interest would be served by granting the injunction. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The four preliminary injunction factors are "'factors to be balanced, not prerequisites that must be met.'" *Michael v. Futhey*, No. 08-3932, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is a likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); *see also Winter*, 555 U.S. 22-23 (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction"). Additionally, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. Injunctive relief is "an extraordinary remedy which should be granted

4

only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Layette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th. Cir. 2002); *Winter*, 555 U.S. at 24. Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Learly v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Further, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland,* 740 F.2d 432, 438, n.3 (6th Cir. 1984). Plaintiff has failed to carry his burden.

### III. PRELIMINARY INJUNCTIVE RELIEF TO PRECLUDE A PRISON TRANSFER IS NOT WARRANTED

In his first motion, Plaintiff contends that MDOC-Health Services should be preliminarily enjoined from transferring him to another correctional facility for the following reasons: (1) a prison transfer in retaliation for his filing this lawsuit would violate his First Amendment rights; (2) a prison transfer would prevent him from graduating from the Lakeland Correction Facility Food Technology Program; and (3) a prison transfer would prevent future family visits as Plaintiff is presently housed close to his home. (Dkt. 13 at 2.) Even putting aside the potential Eleventh Amendment immunity issues concerning Plaintiff's claims against MDOC Health Services, Plaintiff's arguments do not support the extraordinary relief being sought.

First, they have nothing to do with the Eighth Amendment claims at issue in this litigation. The allegations in Plaintiff's Amended Complaint pertain solely to the inadequate treatment and pain medication he claims he is receiving for his fibromyalgia. As explained by another court:

> A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. Thus, a party moving for a preliminary injunction must necessarily establish a relationship

5

> between the injury claimed in the party's motion and the conduct asserted in the complaint. It is self-evident that [Plaintiff's] motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of [Plaintiff's] 42 U.S.C. § 1983 lawsuit. To the contrary, [Plaintiff's] motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit. Thus, the district court correctly ruled as a matter of law that [Plaintiff] was not entitled to a preliminary injunction.

*Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (internal citations omitted). Similarly here, Plaintiff's mere speculation that he might be transferred to another correctional facility in retaliation for filing the present lawsuit in violation of his First Amendment rights does not warrant a preliminary remedy for alleged deliberate indifference to his medical needs.

The law in this Circuit also makes clear that a mere prison transfer without something more – i.e., without "foreseeable, negative consequences" that are "inextricably" bound to the transfer – does not constitute a First Amendment violation. *See Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) ("[G]enerally, a transfer to another institution 'does not constitute an adverse action . . . .' As such, an alleged retaliatory transfer ordinarily 'should be characterized as *de minimis* and dismissed at the summary judgment stage.'" (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)); *Siggers-El*, 412 F.3d at 701 ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."); *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("We have repeatedly held that transfer from one prison to another prison 'cannot rise to the level of an "adverse action" because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.'" (collecting unpublished

Sixth Circuit cases)). If Plaintiff is subject to such a prison transfer at some point in the future, he might have a new case involving a First Amendment claim. But Plaintiff's first motion makes no showing of a likelihood of success on the merits or irreparable harm from either a First or Eighth Amendment violation.[3]

## IV. PRELIMINARY INJUNCTIVE RELIEF DIRECTING SPECIFIC MEDICAL TREATMENT IS NOT WARRANTED

### A. No Likelihood of Success on the Merits

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Eighth Amendment deliberate indifference claims. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff

---

[3] The courts are also reluctant to get involved in decisions involving prisoner placement. In *Miller v. Garner,* No. 699-83, 1999 U.S. Dist. LEXIS 23402 (S.D. Ga., June 2, 1999), the court denied an inmate's motion for a preliminary injunction seeking a transfer to another prison and explained:

> Furthermore, Plaintiff's request for the Court to order Defendants to transfer him to a medical prison is not an appropriate request because an inmate does not have a constitutional right to placement in any particular prison. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451 (1976). The Supreme Court has stated that "[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Meachum*, 427 U.S. at 229, 96 S. Ct. at 2540, 49 L. Ed. 2d 451 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 1837, 36 L. Ed. 2d 439 (1973)). It is not within the Court's discretion to micro-manage the prison system and force a transfer of an inmate from one facility to another. Thus, the Court cannot order the transfer of Plaintiff to another institution.

*Id*. at *5-6; *see also Smith v. Jones,* No. 08-661, 2009 U.S. Dist. LEXIS 128606 (W.D. Mich. Apr. 27, 2009) ("A prisoner has no constitutional right to incarceration in any particular prison" (citing *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983))); *Fox v. Koskinen*, No. 09-160, 2011 U.S. Dist. LEXIS 29176, at *17 (W.D. Mich. Feb. 3, 2011) (stating, in denying injunctive relief, that "a prisoner has no right under federal law to compel or prevent a transfer to another facility.")

has failed to make such a showing both procedurally and substantively.

### 1. Failure to Exhaust

The Court notes that Defendant NP Conklin has filed a dispositive motion on the ground that Plaintiff has failed to exhaust his administrative remedies. (Dkt. 18.) Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, prisoners seeking to bring § 1983 actions with respect to prison conditions must first exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007). To satisfy this exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The PLRA requires "proper exhaustion," meaning that plaintiffs must timely pursue available administrative remedies. *Woodford*, 548 U.S. at 93. Failure to file an administrative grievance within proper time limits precludes proper exhaustion and thus bars the claim in federal court. *Id.* The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences," whether for broad prison conditions suits or for individual allegations of abuse. *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

As mentioned above, the allegations in Plaintiff's Amended Complaint identify the exhaustion of only one grievance pertaining to his treatment at LRF. Thus, because there do not appear to be any exhausted grievances as to the non-LRF Defendants, Plaintiff is unlikely to succeed on the merits of his claims against them. Moreover, the one exhausted grievance pertains to presently unidentified defendants – i.e., John Doe MD #2, John Doe MD #3 and John Doe P.A. At this time, therefore, the Court is not prepared to find that Plaintiff has demonstrated a substantial likelihood of success on the merits as to those Defendants either.

### 2. *Disagreement with Care is not Medical Indifference*

Irrespective of the exhaustion issue, the allegations in Plaintiff's Amended Complaint do not demonstrate that he has received constitutionally deficient medical care.

"Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference is characterized by obduracy or wantonness — it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). The inquiry into whether a prison official acted with deliberate indifference has both an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id.* at 702-03 (quoting *Farmer,* 511 U.S. at 834). If a failure to treat a particular condition would deny the inmate "the minimal civilized measure of life's necessities," it meets this "objective" prong. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To satisfy the subjective component, Plaintiff must show that the officials in question "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (explaining that a plaintiff "may satisfy the subjective prong of this inquiry by establishing that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quotation omitted)).

Plaintiff has not established, for purposes of preliminary relief, that he has fibromyalgia or any other "sufficiently serious." Plaintiff certainly alleges that he suffers from fibromyalgia, but he

9

provides no supporting medical records. *See Crump v. Mich. Dep't of Corr.*, No. 11-12146, 2012 U.S. Dist. LEXIS 40542, at *5 (E.D. Mich. Mar. 26, 2012) (recognizing that "[g]iven the nature of injunctive relief, Plaintiff cannot merely rest on his pleadings and allegations without any support or evidence that the circumstances require such relief.") And none of the prison doctors have made this diagnosis. Indeed, Plaintiff's allegations make clear that Defendant medical personnel repeatedly refused to document such a diagnosis. (Dkt. 10.) The allegations also indicate that Plaintiff's medical records from his private doctor indicated a normal MRI on June 15, 2007. (*Id.* at ¶ 76.) Moreover, at least one doctor concluded that Plaintiff's pre-incarceration drug addiction accounted for his desire for additional pain medication. (*Id.* at ¶ 161.)

Further, assuming that Plaintiff has established that he suffers from chronic and widespread muscle pain satisfying the objective prong, his allegations make clear that he has been treated for such pain. According to Plaintiff's Amended Complaint, he was seen by medical personnel, received medical services and multiple medications for his pain, including Naproxen, Elavil, and Mobic, and was advised regarding additional analgesics he could purchase at the prison store. *See, e.g.,* (Am. Compl. at ¶¶ 39, 41, 59, 110, 115.) The Defendants further advised regarding diet, exercise, and the application of warm compresses to help alleviate the pain. (*Id.* at ¶¶ 68, 72, 76.) It also appears that Plaintiff had x-rays taken. (*Id.* at ¶ 142-144.)

The essence of Plaintiff's allegations is clear: he is dissatisfied with the pain medications he is receiving. Equally clear, however, is that "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim." *Turner* v. *Unknown Parties*, No. 11-1128, 2012 U.S. Dist. LEXIS 16674, at *20 (W.D. Mich. Feb. 9, 2012) (citing *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996)); *see also Almond v. Pollard*, No. 11-1555, 2011 WL 4101460, at *3 (7th

Cir. Sept. 15, 2011) (affirming summary judgment in a case involving a prisoner's complaints about the treatment of his back pain, explaining that the prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference." (citing *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011))); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat [Plaintiff's] pain. However, this difference of opinion does not support an Eighth Amendment claim.").

Similarly, Plaintiff's desire for different or stronger medications does not show that Defendants' medical care constitutes a "reckless disregard for a substantial risk of human harm." *See Greenman v. PHS*, No. 10-549, 2011 U.S. Dist. LEXIS 141062, at *30-31 (W.D. Mich. Dec. 8, 2011) (granting summary judgment where "the record shows that defendant treated plaintiff's condition on an ongoing basis with appropriate medications. Plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by [defendant] falls far short of supporting an Eighth Amendment claim."); *see also Baez v. Falor*, No. 09-1149, 2012 U.S. Dist. LEXIS 138574, at *101 (W.D. Pa. Sept. 24, 2012) (explaining that "[p]laintiff is not constitutionally entitled to the treatment of his choice and it cannot be assumed that Oxycodone, or any other pain medication, would have successfully relieved his pain. In fact, all indication points to the contrary. Given Plaintiff's condition, it is unlikely that any medication available would render him completely free of pain."); *Wright v. Genovese*, 694 F. Supp. 2d 137, 160-61 (N.D.N.Y. 2010) (explaining that a physician's "concern about prescribing narcotic pain medication, on which inmates with possible substance abuse issues could become dependent, may appropriately inform a medical judgment about what drug to prescribe") (collecting cases); *Rochell v. Corr. Med. Servs.*, No. 05-268, 2006 U.S. Dist. LEXIS 37943, at *10 (N.D. Miss. Apr. 10, 2006) (dismissing prisoner's deliberate

11

indifference claims because "[t]he constitution does not . . . guarantee pain-free medical treatment, and the defendants provided the plaintiff with medication for his pain. While the plaintiff might have preferred stronger medication, his mere disagreement with his medical treatment does not state a constitutional claim. Indeed, prison doctors are understandably hesitant to prescribe powerful narcotics to prisoners except when absolutely necessary.").

In sum, Plaintiff's disagreement with particular medical decisions made by Defendants and his conclusory allegations of deliberate indifference do not negate the extensive allegations that these Defendants reasonably and diligently addressed Plaintiff's medical needs over an extended period of time. Moreover, even if Plaintiff is able to show a disputed issue of fact as to whether his pain management is appropriate, such a showing is not sufficient for equitable relief. *Leary*, 228 F.3d at 739. This Court is ill-equipped to micro-manage prisoner medical treatment. *See Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law[.]"); *Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th Cir. 2003) ("[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill equipped[.]").

### B.     The Other Factors Do Not Support Injunctive Relief

Given Plaintiff's lack of likelihood of success on the merits, it is not necessary to discuss the other injunction factors in great detail. *Gonzales,* 225 F.3d at 625.

The potential for irreparable harm does not strongly support the issuance of a preliminary injunction. As another court in this Circuit recently explained:

> A plaintiff's harm from the denial of a preliminary injunction is

> irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Although Plaintiff may continue to experience pain during the course of the litigation, it is an open question whether Plaintiff will successfully prove that his pain is caused by Defendants' deliberate indifference or whether his complaint merely involves a difference of opinion with his care provider. On balance, given the dubiousness of success, it is not clear that any harm would be irreparable.

*Kern v. Prison Health Services, Inc.*, 2012 U.S. Dist. LEXIS 31936, at * 6-7 (W.D. Mich. Mar. 9, 2012). Additionally, as Plaintiff's motions impact on prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Indeed,

> [d]ecisions concerning prisoner medical care are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. That showing has not been made here.

*Id.* at *7-8 (citing *Glover*, 855 F.2d at 286-87 ). Finally, Plaintiff's request for specific medical care is, in effect, seeking relief as if he has already prevailed on the merits and demonstrated inadequate care. But the purpose of a preliminary injunction is to maintain the relative positions of the parties *until* proceedings on the merits can be conducted. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). Because Plaintiff's requested relief would alter the status quo, the public interest is not served by granting the motion for a preliminary injunction.

## V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court **RECOMMENDS** that Plaintiff's Motions for Preliminary Injunction and Temporary Restraining Order (Dkts. 13, 22) be **DENIED**.

## VI.   FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within

13

fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES MAGISTRATE JUDGE

Dated: January 28, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 28, 2013.

                                        s/J. Johnson
                                        Deputy Clerk