UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUBREY CHRISTIAN #722265

    Plaintiff,

Case No. 12-12936

v.

Honorable Stephen J. Murphy, III
Magistrate Judge Laurie J. Michelson

MICHIGAN DEPARTMENT OF
CORRECTIONS — HEALTH
SERVICES, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON (1) DEFENDANT JOLANE CONKLIN'S MOTION TO DISMISS [18] AND (2) DEFENDANTS MICHIGAN DEPARTMENT OF CORRECTIONS BUREAU OF HEALTH CARE SERVICES, JENNIFER HATCHER, KAREN RICH, BROOKE COOPER, CLAIRE VANDER VELDEN AND TAI BLAKE'S MOTION FOR DISMISSAL, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [23]**

This is a *pro se* prisoner civil rights action filed by Plaintiff Aubrey Christian ("Plaintiff") alleging that numerous health care providers at several Michigan Department of Corrections ("MDOC") facilities have violated his Eighth Amendment rights by denying him adequate medical care to treat the chronic muscle pain caused by his fibromyalgia. (Dkt 20, Am. Compl.) All pre-trial proceedings have been referred to this Court. (Dkt. 28.) Presently before the Court are two motions for dismissal. Defendant Jolane Conklin ("Conklin"), a Nurse Practitioner ("NP") at Lakeland Correctional Facility, has filed a motion to dismiss on the ground that Plaintiff's grievance does not name her or apply to her medical treatment, and thus, Plaintiff has failed to exhaust his administrative remedies for her alleged conduct. (Dkt. 18.) The MDOC Defendants – Michigan Department of Corrections Bureau of Health Care Services and Earnest C. Brooks Correctional

Facility Registered Nurses Jennifer Hatcher, Karen Rich, Brooke Cooper, Claire Vander Velden and Tai Blake – have also filed a motion to dismiss and/or for summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies because he did not specifically name them in the grievance. (Dkt. 23.) They also argue that sovereign immunity bars Plaintiff's claims. (*Id.*) Having carefully reviewed the relevant pleadings and briefing, the Court RECOMMENDS that Defendant Conklin's motion be GRANTED and the MDOC Defendants' motion be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff alleges that he suffers from fibromyalgia and, prior to his incarceration on August 17, 2009, a pain-management specialist helped control the chronic, widespread muscle pain caused by this condition. (Am. Compl. at ¶ 28; Dkt. 22, Pl. Mot. for Prelim. Inj. at Ex. 1, Pl. Decl. at ¶¶ 2, 6.) Plaintiff further alleges that, since his incarceration, he has been denied fibromyalgia treatment and provided inadequate pain medication. (Am. Compl.; Pl. Decl. at ¶¶ 4-5.) More specifically, Plaintiff's 170-paragraph Amended Complaint presents a chronological three-year history of his appointments with numerous doctors, nurses, and physicians' assistants at four MDOC facilities, as well as the medical kites he submitted seeking additional appointments and pain medication. (Dkt. 10.)[1] Plaintiff alleges a similar pattern of conduct at every facility: he advised the medical personnel that he suffered from fibromyalgia, they refused to document this diagnosis in his

---

[1] Plaintiff resided at the following MDOC correctional facilities: (1) Charles E. Egeler Reception and Guidance Center ("RGC") in August 2009; (2) Gus Harrison Correctional Facility ("ARF") from August 2009 until early February 2011; (3) Earnest C. Brooks Correctional Facility ("LRF") from February 10, 2011 until early January 2012; and (4) Lakeland Correctional Facility ("LCF") from January 2012 to the present. (Dkt, 10.)

Institutional Medical File, and while they evaluated him and prescribed various pain medications, none of the medications were adequate to relieve his pain. (*Id.*)

### B.     Plaintiff's Grievance

On November 10, 2011, while confined at the Earnest C. Brooks Correctional Facility ("LRF"), Plaintiff filed grievance LRF-11-11-01-980-12F. Plaintiff's Step I Grievance Form explains that he sent over 17 kites to health services trying to resolve the issue of his chronic fibromyalgia pain, health services returned the kites "without really doing anything to stop the pain," health services put him on medication that does not work, a doctor took him off the medication without providing a substitute, and a physician's assistant then restarted the ineffective medication and refused to change it or increase the dosage. (Dkt. 30, Pl. Resp. to Conklin Mot. to Dismiss at Ex. E.) The Grievance Form also references an attached timeline of the kites Plaintiff sent to health services trying to resolve his pain issue, but none of the parties provides the attachment. (*Id.*)

On December 16, 2011, MDOC nurse personnel responded to the grievance as follows:

> The grievant claims that the pain medication that he has been prescribed is ineffective in treating his fibromyalgia symptoms.
>
> The grievant was evaluated by the medical practitioner (MP) on 10/24/11. The pain medication that was approved by the regional medical officer (RMO) was prescribed to the grievant. The MP determines the level of care and it was decided that the pain medication ordered was medically indicated for the grievant's current condition.
>
> It should be noted that the grievant was evaluated by the MP and the medication prescribed on 10/24/11 and this grievance was received on 11/18/11 making it untimely.
>
> OP 03.04.100C Pharmacy Services and Medication Management has been followed.
>
> Grievance denied.

3

(*Id*. at Ex. F; Am. Compl. at ¶ 127.) Plaintiff appealed this denial at Step II because he was "still in pain and nothing is being done about it" and he "should not have to live in pain when there is medication that can improve [his] pain and symptoms . . . ." (*Id*. at Ex. G.) The Step II Response upheld the denial:

> Grievant claims he is not receiving adequate treatment to manage chronic pain related to fibromyalgia.
>
> Review of the electronic medical record reveals that grievant, per documentation of nursing visit on 9/15/11, reported that he was on Oxycontin and Stadol for his symptoms prior to incarceration. He reported that the Naproxen he was prescribed at that time was ineffective. Grievant was seen by the medical provider on 9/21/11. The provider requested approval from the Regional Medical Officer (RMO) for a course of pain medication to treat current symptoms. Elavil 25MG was approved and ordered for 60 days. On 10/11/11, a kite was received from the grievant claiming that he had been on Elavil in the past and that it did not work. A chart review was ordered and was completed on 10[/]15/11. Upon conclusion of that review, the provider documented, ". . . it is not appropriate nor feasible to expect a different med after 7 days. This is the product that is approved and available for [patient] and if he does not want to take it[,] he can use products available to him in the store." On 10/24/11, in response to grievant's request to raise the dose of Elavil, the grievant was seen by the provider who did not deem such an increase appropriate at that time. Grievant has been seen on multiple occasions since then, most notably for complaints of kidney stones, an infected toe, shoe issues and his routine chronic care appointments. No complaints of acute pain related to fibromyalgia were noted throughout these visits over the past few months.
>
> On 1/3/12 grievant was transferred to LCF. That same day, a kite was received in which grievant requested to be seen for his fibromyalgia. A nursing appointment was scheduled and conducted on 1/9/12. Per documentation of that visit, grievant reported that he was diagnosed with fibromyalgia prior to incarceration and was treated with physical therapy, salicylates, Lyrica and methadone. Nurse instructed grievant to continue with exercises from therapy, to try warm compresses as needed and to kite if symptoms did not improve.
>
> Grievant is advised that chart review reflects he has received ongoing

> medical attention re: his multiple medical issues. Grievant is assured that the medical providers will order those interventions deemed appropriate to address his symptoms. As instructed by facility staff, grievant is encouraged to submit a CHJ-549 Health Care Request for evaluation should any adverse symptoms persist or worsen.

(*Id*. at Ex. H.)

After being transferred to the Lakeland Correctional Facility ("LCF") on January 3, 2012, Plaintiff filed a Step III appeal. (*Id*. at Ex. I.) He explained that, as advised in the Step II Response, he put in another kite to talk to an LCF doctor about his fibromyalgia symptoms and he "saw the nurse and nothing was done." (*Id*.) He requested to see the pain management committee. (*Id*.) The grievance appeal was again denied:

> All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. The grievant has been evaluated and provided with treatment determined to be clinically indicated by his Medical Provider. His failure to agree with the clinical judgment of the Medical Provider does not substantiate his allegation. He is encouraged to contact Health Services if he has current concerns.

(*Id*. at Ex. J.)

Plaintiff then submitted his concern to the Office of Legislative Ombudsman in Lansing, Michigan.[2] On March 27, 2012, he wrote that he has severe, widespread chronic pain from fibromyalgia and that,

> I have been turning in Health Care Requests about this ongoing problem for over a year now. I have been trying to get into Pain Management for over a year now, but the Doctor refuses to refer me to the Pain Management Committee. I filed a grievance on the issue

---

[2] The Grievance Appeal Form states that "[i]f you find the Step III Director's response unsatisfactory, you have the option of referring the grievance to the Office of Legislative Corrections Ombudsman . . . ." (Dkt. 30, Pl. Resp. at Ex. I.) Plaintiff argues that this is part of the grievance appeal process. (Dkts. 30, 31.)

5

>> an[d] still nothing was done. I appealed the Grievance at each step and it was denied.

(*Id*. at Ex. K.) The Ombudsman requested Plaintiff to provide more detailed information, including health care kites to and responses from medical staff. (*Id*. at Ex. L.) Plaintiff avers that he was interviewed by Jennifer Howison, an Analyst from the Ombudsman's Office, on May 9, 2012 at which time he gave her a "time-line of specific events, dates, names and places on when and where and how [he] was denied Medical Care and adequate Pain Medication." (*Id*. at Ex. M, Aff. of Aubrey Lee Christian at ¶¶ 4-5.) On June 8, 2012, Ms. Howison provided the following response to Plaintiff's Complaint:

>> This letter is to follow up with you following our meeting on May 9,[ ]2012 and to advise you that I have completed my investigation into your claim that you are not receiving adequate medical treatment.
>>
>> I have inquired of Health Care, and reviewed all relevant medical records related to your concerns. At this time, it appears that you have been evaluated for several different issues, and it appears that you received appropriate treatment. You have been evaluated by psychiatric and medical professionals on a frequent basis and no current diagnosis of fibromyalgia has been determined. Therefore, it appears that additional medications for that condition are not medically indicated at this time.
>>
>> The Legislative Corrections Ombudsman is not qualified to make medical decisions. What we can do is ensure that you received access to care, and it appears that you were consistently evaluated by health care professionals. In the future, it is my advise that you patiently follow the instructions of health care, continue to kite and communicate your concerns, and comply with any prescribed medications.

(*Id*. at Ex. N.)

### C. Defendants' Motions to Dismiss

Plaintiff filed this lawsuit on July 5, 2012. (Dkt. 1.) He filed an Amended Complaint on

October 4, 2012. (Dkt. 10.) The allegations in the Amended Complaint acknowledge that the only grievance exhausted prior to the filing of this lawsuit is the November 2011 grievance regarding Plaintiff's medical care at LRF (LRF-11-11-01-980-12F). (Am. Compl. at ¶¶ 126, 128, 140, 154.) Plaintiff contends that Defendant Jolane Conklin, a Nurse Practitioner at LCF, denied him medical care in March 2012. (Dkt. 30, Pl. Resp., Ex. M, Pl. Aff. at ¶ 6.) Defendant Conklin filed a Motion to Dismiss on December 20, 2012. (Dkt. 12.) Conklin argues that Plaintiff has failed to exhaust his administrative remedies as to her because the grievance at issue precedes his confinement at LCF and her treatment of him. (*Id*. at 8.)

The MDOC Defendants filed a separate Motion to Dismiss and/or for Summary Judgment on December 27, 2012. (Dkt. 23.) In addition to raising the defense of sovereign immunity, LRF Registered Nurses Jennifer Hatcher, Karen Rich, Brooke Cooper, Claire Vander Velden and Tai Blake, also argue that Plaintiff failed to exhaust his administrative remedies because his grievance does not involve them. (*Id*. at 5-6.)

Plaintiff responds that, as to all of these nurse Defendants, he exhausted his grievance on May 9, 2012 when he provided the Legislative Ombudsman Analyst with a copy of the time-line that included all of their medical treatment (or lack thereof). (Dkt. 30, Pl. Resp. at 10; Dkt. 31, Pl. Resp. at 12-13.)

## II. ANALYSIS

### A. Motion to Dismiss v. Summary Judgment

The MDOC Defendants' motion is for dismissal or, in the alternative, summary judgment. Defendant Conklin's motion seeks dismissal solely pursuant to Federal Rule of Civil Procedure 12(b). Conklin contends that "[a] motion brought on [the defense of failure to exhaust administrative remedies] is designated as an unenumerated motion under Rule 12(b) of the Federal

7

Rules of Civil Procedure." (Conklin Mot. to Dismiss at 2 (citing *Day v. Colbry*, No. 10-13856, 2012 WL 4088875 (E.D. Mich. Aug. 23, 2012))).[3]

Here, all of the parties rely on matters outside the pleadings. Even considering the grievance appeals and responses to be part of the allegations in Plaintiff's Amended Complaint, Defendants also rely on the Affidavit of Richard Russell, MDOC's Manager of the Grievance Section, to support that Plaintiff exhausted only one grievance. (Dkt. 18, Conklin Mot. to Dismiss at Ex. A; Dkt. 23, MDOC Defs. Mot. to Dismiss at 5.) Plaintiff additionally relies on his own affidavit and the investigation by the Legislative Ombudsman. Indeed, Plaintiff has attached fifteen (15) exhibits to his response to Conklin's Motion to Dismiss. (Dkt. 30.) Having reviewed Plaintiff's responses to the motions, the Court finds that he has had "a reasonable opportunity to present all the material that is pertinent to the motion(s)." Fed. R. Civ. P. 12(d). Moreover, "whether categorized as a 12(b)(6) motion or otherwise, the underlying question in this motion is whether the Defendants have carried their burden of showing that the Plaintiff failed to exhaust his administrative remedies. If they have, then the unexhausted claims must be dismissed without prejudice." *Cook v. Caruso*, No. 09-10892, 2011 WL 768112, at *2 (E.D. Mich. Jan. 25, 2011) *report adopted by*, 2011 WL 768076 (E.D. Mich. Feb. 28, 2011). Thus, the Court will treat the pending motions as motions for summary judgment. *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App.'x 462, 465 (6th Cir. 2010).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment,

---

[3] In *Day*, Magistrate Judge Whalen found that the result would be the same whether the motion was analyzed as one to dismiss or for summary judgment.

8

the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### B. Legal Standards Governing Exhaustion

The Prisoner Litigation Reform Act bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion requirement is justified on two grounds. First, it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002). Additionally, the requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life, regardless of the

nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, the prisoner must "properly" exhaust his claims by complying with the MDOC grievance policy. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."); *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted. . . . [and] must adhere to any time limitations that are part of the institutional grievance policy." (citing *Jones Bey v. Johnson*, 407 F.3d 801, 803 n.2 (6th Cir. 2005) *rev'd on other grounds by Jones v. Bock*, 549 U.S. 199 (2007))).

It is not, however, a prisoner's burden to show that he has properly exhausted his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, the failure to exhaust is an affirmative defense, *Jones*, 549 U.S. at 216, and a defendant to a prisoner suit has both the burden of production and persuasion on the issue of non-exhaustion, *Surles*, 678 F.3d at 455-56. As such, a defendant's "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles*, 678 F.3d at 455-56 (internal quotation marks and citation omitted). "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

  **C.**   **Plaintiff Did Not Exhaust as to Defendant Conklin**

It is undisputed that Plaintiff exhausted only one grievance involving his medical treatment prior to his transfer to LCF: LRF-11-11-01-980-12F.  As Plaintiff explained in his response to the MDOC Defendants' motion:

> On November 10, 2011, while at Earnest C. Brooks Correctional Facility [LRF] in Muskegon Heights, Michigan, Plaintiff Aubrey Lee Christian submitted a Step I Grievance Form to the Grievance Coordinater [sic] stating that "they" (referring to all employees of the Michigan Department of Corrections who had any involvement with treating the Plaintiff's medical needs from August 2009 to November 2011) had prescribed medications that were ineffective at treating the Plaintiff's Medical Condition Fibromyalgia, and the Doctor (referring to John Doe M.D. #2) discontinued the Plaintiff's medication, and the P.A.(referring to Defendant John Doe P.A.) refused to change the ineffective medication.

(Dkt. 31 at 7-8.)  It is equally undisputed that NP Conklin did not have "any involvement with treating the Plaintiff's medical needs" until March 2012.  (Pl. Aff. at ¶ 6.)  Thus, Plaintiff's 2011 grievance did not, and could not, pertain to Defendant Conklin.  *See* C*oleman v. Gullet*, No. 12-10099, 2012 U.S. Dist LEXIS 176174 (E.D. Mich. Sept. 4, 2012) *report and recommendation adopted by* 2012 U.S. Dist. LEXIS 169144 (E.D. Mich. Nov. 29, 2012) (finding that because the plaintiff prisoner had not been transferred to Thumb Correctional Facility at the time he filed the grievances at issue, these grievances could not support a claim against the three defendants who subsequently saw Plaintiff at Thumb Correctional Facility).

Plaintiff's contention that the time-line he provided to Ombudsman Analyst Howison on May 9, 2012 references Defendant Conklin does not create a genuine issue of material fact as to exhaustion.  The MDOC Policy Directive in effect at the time Plaintiff filed his grievance, PD 03.02.130 (effective July 9, 2007), does not include complaints to the Legislative Ombudsman as part of the three-step grievance appeal process.  (Dkt. 30, Pl. Resp. at Ex. B.)  Moreover, it would defeat a fundamental purpose of the exhaustion requirement if a plaintiff did not have to raise his

11

claim against a defendant until six months after filing his Step I Form.

In sum, no reasonable jury could find that the LRF grievance gave "fair notice," *see Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *other principles abrogated by Jones v. Bock*, 549 U.S. 199 (2007), that Plaintiff was grieving someone at LCF, let alone Conklin specifically.

### D. The Claims Against the MDOC Defendants

#### 1. *MDOC Health Services Claims are Barred by Sovereign Immunity*

The MDOC Defendants first contend that they are entitled to Eleventh Amendment immunity. (Dkt. 23, MDOC Defs. Mot. to Dismiss at 8.) Plaintiff agrees that his claims against MDOC Bureau of Health Care Services are barred by sovereign immunity. (Dkt. 31, Pl. Resp. at 3.) Thus, their Motion to Dismiss and/or for Summary Judgment should be granted. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *McFadden v. Comm'r of Soc. Sec.*, 5 F. App'x. 388, 390 (6th Cir. 2001) ("[t]he State of Michigan has not consented to civil rights suits in the federal courts.").

The Eleventh Amendment also bars § 1983 suits against state officials sued in their official capacities for money damages. *Cady v. Arenac Cty*, 574 F.3d 334, 342 (6th Cir. 2009) (citing *Kentucky v. Graham* 473 U.S. 159, 169 (1985)). The LRF nurses, however, are also sued in their individual capacities. The sovereign immunity defense does not apply to these claims. *See, e.g., Berndt v. Tenn.*, 796 F.2d 879, 882 (6th Cir. 1986) ("The Eleventh Amendment does not bar suits for money damages brought against state officials in their individual capacities when they are alleged to have violated federal law.").

12

*2. MDOC Defendants Have Failed to Satisfy Their Burden on Exhaustion*

The MDOC nurse defendants also contend that Plaintiff has failed to exhaust his administrative remedies because the LRF grievance does not include them. They read the grievance as pertaining only to the unnamed doctor who took Plaintiff off his pain medication without providing a replacement medication and the unnamed physician assistant who refused to put Plaintiff on another pain medication. (MDOC Defs. Mot. to Dismiss at 5-6.) Plaintiff does not completely refute this reading. The allegations in his Amended Complaint suggest that the grievance was limited to the referenced doctor and physician assistant. (Am. Compl. at ¶ 126.) Similarly, his summary judgment response explains that:

> [Plaintiff] used broad terms such as "Doctors" and "P.A.s" in the Grievance Forms, and did not state by name the individuals involved in the [separate] incidents of the Plaintiff being denied Medical Care and adequate Pain Medication. The Plaintiff directed his Grievance towards the issue of Denial of Medical Care and adequate Pain Medication instead of directing it towards the individuals who was responsible for the Plaintiff's Medical Care. It was not until after the Step III Grievance Appeal was denied (Exhibit I) that the Plaintiff submitted a complete time-line of events, dates, places, and names to Analyst Jennifer S. Howison, of the Legislative Corrections Ombudsman's Office (Exhibit L, ¶ 4-6) . . . .

(Dkt. 31, Pl. Resp. at 14.) None of the parties, however, address the significance of the grievance references to "health services" and the kites, which, according to Plaintiff's Amended Complaint, were handled by the nurses. (Dkt. 10, Am. Compl.)

It is true that proper exhaustion of administrative remedies means "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). MDOC Policy Directive 03.02.130 sets forth the procedures that govern the grievance filed by Plaintiff. (Dkt. 30, Pl. Resp. at Ex. B.) And the Policy Directive provides that the grievance must include "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id*. at ¶ R.) If there is

13

a response with which the prisoner is unsatisfied, he may appeal to the Step II Grievance Coordinator. (*Id*. at ¶ DD).

Notably, however,"[a]lthough the [MDOC] policy requires a grievance to include specific names, those requirements are relaxed when the purpose of the grievance has been achieved." *Hall v. Raja*, No. 09-10933, 2010 U.S. Dist. LEXIS 77651 at *8-9 (E.D. Mich. 2010). In *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), the defendants challenged on exhaustion grounds the complaint of a prisoner who "pursued his grievance through all three levels of prison review, yet he failed to identify the 'names of all those involved' in the grievance, as the prison's grievance procedures require." *Id*. at 323. The Court held that "[b]ecause the Michigan Department of Corrections opted to dismiss his grievance on the merits rather than invoke its procedural bar, Reed-Bey exhausted his claim." *Id*. The Court reasoned as follows:

> When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we. . . . Enforcing internal prison rules even when prison officials do not and even when they proceed to address a grievance on the merits takes *Woodford* one step too far. It would do more than ensure that prison officials get the first shot at correcting their own mistakes; it would give their merits-based grievance denials undeserved insulation from federal judicial review.

*Id*. at 325, 326. The *Hall* court subsequently reinforced:

> Since the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (internal quotation marks and citation omitted).
>
> A fair indicator that the purpose of the grievance was fulfilled is the prison's response to the inmate's complaint. If the information in the grievance is too vague or imprecise, a response so indicating would

14

> tell the interested parties that more detail is necessary. However, when prison officials address the merits of the prisoner's complaint without even mentioning a problem identifying the object of the grievance, the administrative system has worked and the prison officials have had the "opportunity to correct [their] own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (internal citation and quotation marks omitted).

*Hall*, 2010 U.S. Dist. LEXIS 77651 at *7-8.

There is mixed authority on whether Plaintiff's general reference to "health services" is sufficient to identify the LRF nurses that were involved with Plaintiff's treatment. *Compare Binion v. Glover*, No. 07-13443, 2008 U.S. Dist. LEXIS 66896, *8-10 (E.D. Mich. Aug. 29, 2008) (ultimately concluding that "failure to identify a person by name does not preclude exhaustion through the MDOC system, as long as the prisoner identifies a defendant based on the factual allegations." (citing cases)) and *Grear v. Gelabert*, No 07-203, 2008 U.S. Dist. LEXIS 11669, 2008 WL 474098, *7-8 (W.D. Mich. Feb. 15, 2008) (where prisoner named "health care staff" in a grievance and prison officials did not reject it for failure to identify the specific persons about whom plaintiff was complaining, court concluded that the claim was exhausted as to *all* health care staff, including those named in the lawsuit) *with Solomon v. Mich. Dept. of Corr.*, No. 2:10-CV-59, 2011 WL 4479300, at *3 (Aug. 31, 2011) *report and recommendation adopted by* 2011 WL 4479407 (W.D. Mich. Sept. 27, 2011) ("A prisoner must specifically mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court." (citing cases)) and *Crawford v. MDOC*, No. 09-7, 2010 U.S. Dist. LEXIS 31113, at *9 (W.D. Mich. Mar. 31, 2010) ("health care at KCF" insufficient to exhaust administrative remedies (citing cases)).

Here, Plaintiff's LRF grievance starts as follows:

> I have sent over 17 kites to health services trying to resolve this issue

15

> I am having with chronic pain due to fibromyalgia. Health services keeps returning my kites without really doing anything to stop the pain. They put me on medication that does not work.

(Dkt. 30, Pl. Resp. at Ex. E.) The MDOC nurse Defendants are part of LRF "health services." They are the ones who received and responded to the referenced kites. (Am. Compl. at ¶¶ 65-115.) The grievance also references an attached timeline of the kites Plaintiff sent to health services trying to resolve his pain issue. (*Id.*) Plaintiff represents that this time-line "named dates, events, names, and places where the Plaintiff had been denied Medical Care." (Dkt. 31, Pl. Resp. at 8.) (It is unclear whether this time-line is the same one that was given to the Ombudsman Analyst and whether it specifically named the MDOC nurses.)

Additionally, even though Plaintiff's grievance only referenced "health services" (and an unnamed doctor and physician assistant), MDOC did not reject it for lack of specificity. To the contrary, MDOC responded to the substance of the grievance and all subsequent appeals. The responses identify the scope of the grievance as Plaintiff being prescribed ineffective pain medication to treat his fibromyalgia and not receiving adequate treatment to manage his chronic pain. (Dkt. 31, Pl. Resp. at Exs. E, G, I.) They further suggest that Plaintiff's medical chart and/or history were reviewed – which would include the activities of the nurse Defendants. (*Id.*) On the present record, therefore, an argument can be made that Plaintiff complied with the "spirit and purpose of the administrative exhaustion rules," *Hall*, 2010 U.S. Dist. LEXIS 77651 at *7-8, as to the LRF nurses. While the grievance does not specifically name them, the Court finds that, on the current record, a reasonable jury could find that the grievance gave these Defendants fair notice of the claims against them. *See Burton v. Kakani*, No. 09-10893, 2009 U.S. Dist. LEXIS 87213, at *6-7 (E.D. Mich. Feb. 2, 2010) (finding that "because [plaintiff's] grievance provided sufficient information based upon which the prison could easily identify the individuals being grieved, it

16

served to exhaust [plaintiff's] claims against those individuals despite the fact that the individuals' names were not included in the grievance."); *Calhoun v. Hill*, No. 07-11613, 2008 U.S. Dist. LEXIS 70382, at *8 (E.D. Mich. Sept. 17, 2008) (noting that the court may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved.).

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court **RECOMMENDS** that (1) Defendant Conklin's motion to dismiss be **GRANTED**; (2) MDOC Bureau of Health Care Services' Motion for Summary Judgment be **GRANTED**; and (3) the MDOC Registered Nurse Defendants' Motion for Summary Judgment be **DENIED** (as to the claims against the nurses in their individual capacities). Upon request, the Court will grant leave to the MDOC Registered Nurse Defendants to file a subsequent summary judgment motion on the merits.

## VI. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: February 12, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 12, 2013.

s/Jane Johnson
Deputy Clerk